**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**GREENEVILLE DIVISION**

| | | |
|---|---|---|
| MIKAYLA EVANS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 2:24-CV-00106 |
| | ) | |
| JOHNSON CITY et al., | ) | |
| | ) | |
| Defendants | ) | |

---

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY JUSTIN JENKINS IN HIS INDIVIDUAL CAPACITY**

---

The Defendant, Justin Jenkins, in his individual capacity, moves to dismiss all claims against him pursuant to <u>Fed. R. Civ. P.</u> 12(b)(1) and 12(b)(6), and in support of his motion, alleges more particularly as follows:

**FACTS**

The Plaintiff filed the Complaint in this case on June 20, 2024. See Doc. 1. The Plaintiff then filed an Amended Complaint on August 27, 2024, and a Second Amended Complaint on January 20, 2025. Docs. 11 & 50.

The Plaintiff's allegations are centered on the alleged criminal activities of Sean Williams ("Williams"), and specifically on an incident involving the Plaintiff that occurred on or about September 19, 2020, at Williams' apartment. Doc. 50, Page ID #737-38. The Plaintiff alleges the Johnson City Police Department ("JCPD") failed to investigate her incident and Williams for other crimes, including rape, because members of the JCPD and Williams were involved in a corruption

scheme that involved bribery. Id. at Page ID #736-37. As a result of the alleged failure by JCPD to investigate and charge Williams, and based upon JCPD's purported discriminatory policies regarding the investigation of sex crimes against women, the Plaintiff alleges she was victimized by Williams on September 19, 2020, when Williams allegedly drugged her and pushed her out of his fifth-floor apartment window. Id. at Page ID #777-80.

Specifically, the Plaintiff alleges that on September 19, 2020, the Plaintiff was out with friend in downtown Johnson City. Id. at Page ID #737. The Plaintiff alleges she and a male friend were invited into a garage owned by Williams and after about twenty minutes inside she "began feeling effects of a drug, and her speech began to slur." Id. at Page ID #738. The Plaintiff and her friend were invited by Williams to his apartment across the street. Id. According to the Plaintiff, upon information and belief, while at Williams' apartment, Williams attempted to sexually assault her. During that altercation, Williams pushed the Plaintiff out of his five-story apartment window. Id.

Shortly after the incident, defendants Toma Sparks and Justin Jenkins arrived to investigate. Id. at Page ID #742. After they arrived, Williams used his cell phone to show Jenkins and Sparks video clips from cameras positioned around Williams' apartment. Id. at Page ID #743. Sparks then escorted Williams to JCPD headquarters for an interview. Id. at Page ID #740. During the interview, Sparks and Jenkins allowed Williams to retain possession of his cell phone. Id. According to the Second Amended Complaint, during that time, Williams manipulated his cell phone and erased data. Id. The Second Amended Complaint also alleges that Williams' apartment was left unsecured while Williams was interviewed. Id. at Page ID #743.

Thereafter, "JCPD officers" returned to Williams' apartment to execute a search warrant that Sparks obtained. Id. at Page ID #745. During the course of the search of Williams' apartment,

Page 2 of 22

various electronics and data storage devices were seized, along with a large safe. Id. at Page ID #746. Then, Sparks applied for and obtained another search warrant specifically for the safe. Id. at Page ID #747. The safe was subsequently searched, and the Plaintiff alleges in the Second Amended Complaint that Sparks and Jenkins stole cash and a gold necklace that were contained in the safe pursuant to "an agreement [Jenkins and Sparks] would take overt acts in furtherance of a conspiracy with Williams, to destroy evidence against Williams, and obstruct the investigation into Williams . . ." Id. at Page ID #748. The Plaintiff also alleges JCPD did not search the digital devices seized from Williams apartment as part of JCPD's alleged cover-up of Williams' crimes. Id. at Page ID #746.

The Plaintiff also alleges Jenkins engaged in a money laundering scheme that involved Williams and Female 4 at some point between 2018 and 2022. Id. at Page ID #755. As the Plaintiff's story goes, Jenkins took out a series of auto, home and construction loans over a period of time which the Plaintiff alleges were done in an attempt to launder money he purportedly received from Williams and/or Female 4 as part of the alleged bribery scheme[1]. Id. at Page ID #755-756.

Jenkins vehemently denies all allegations against him.

## LAW AND ARGUMENT

An action may be dismissed if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." Directv,

---

[1]These allegations are taken almost verbatim from filings in the related matter of B.P., et al. v. Johnson City, Tennessee, et al., No:2:23-cv-0071-TRM-JEM and have been extensively briefed, and refuted, by Defendant Jenkins therein.

Inc., v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007). The court must determine whether "the claimant is entitled to offer evidence to support the claims" not whether the plaintiff can ultimately prove the facts alleged. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002). "[T]o survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." Bishop v. Lucent Techs., Inc., 520 F.3d 516, 519 (6th Cir. 2008).

Though generally a court is limited to the pleadings, "[a] court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." New England Health Care Emps. Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 501 (6th Cir. 2003).

1.      **The Plaintiff lacks standing to assert any claim under 42 U.S.C. §1983.**

The Plaintiff has asserted claims under 42 U.S.C. §1983 for purported violations of the equal protection and due process clauses of the Fourteenth Amendment. Plaintiff lacks standing to assert such a claim because neither the due process nor equal protection clauses of the Fourteenth Amendment provide an individual the right to a law enforcement investigation.

This issue was addressed recently in the Fifth Circuit case of Lefebure v. D'Aquilla, 15 F.4th 650 (5th Cir. 2021). The factual allegations in that case were as follows: Patricilla Lefebure ("Lefebure") went to live with her cousin and her cousin's husband, Barrett Boeker ("Boeker"), on

Page 4 of 22

the grounds of a Louisiana State Prison where Boeker was an assistant warden. Lefebure claimed that Boeker repeatedly raped her. Boeker was arrested for second degree rape, but no indictment was ever sought. Id. at *651-52*. Lefebure filed suit alleging that the District Attorney, Samuel D'Aquilla ("D'Aquilla"), conspired with Boeker, Boeker's attorney (who was a relative of D'Aquilla), and the Sheriff to protect Boeker from investigation and prosecution. Id. at 652.

Lefebure's §1983 claims against D'Aquilla included claims under the Fourteenth Amendment's equal protection and due process clauses. She also sued for civil conspiracy. The question on appeal was whether Lefebure had standing to sue D'Aquilla. Id. at 653. The Fifth Circuit explained that standing has three elements:

> First, plaintiff must have suffered an 'injury in fact.'" Id. "Second, there must be a causal connection between the injury and the conduct complained of." Id. "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " *Id.* at 561, 112 S.Ct. 2130 (quoting <u>Simon v. Eastern Kentucky Welfare Rights Organization</u>, 426 U.S. 26, 38, 43, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)).

Id. at 653. The Court then relied upon the United States Supreme Court case of <u>Linda R.S. v. Richard D.</u>, 410 U.S. 614, 617-19 (1973) to hold that Lefebure did not have standing:

> In short, it is not the province of the judiciary to dictate prosecutorial or investigative decisions to the executive branch. And if that is so, then it is understandable why plaintiffs would lack standing to seek judicial review of such executive decisions, as the Court held in <u>Linda R.S.</u> See, e.g., 410 U.S. at 619, 93 S.Ct. 1446 (invoking fundamental principles of "American jurisprudence" to explain why "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another").

> As a result, courts across the country have dutifully enforced this rule in case after case—refusing to hear claims challenging the decision not to investigate or prosecute another person … *Mitchell v. McNeil,*

> 487 F.3d 374, 378 (6th Cir. 2007)("There is no statutory or common
> law right, much less a constitutional right, to an investigation.") …

Id. at 655. The Fifth Circuit further rejected an argument that a discriminatory policy related to investigations or prosecutions would alter the legal analysis:

> And in any event, we do not see how we can in good faith distinguish
> Linda R.S. based on the theory that the decision not to prosecute in
> this case was in fact dictated by a broader, discriminatory policy not
> to investigate or prosecute cases involving a certain protected class of
> victims in violation of the Equal Protection Clause. After all, that was
> precisely the complaint in Linda R.S. as well. There the plaintiff
> alleged that "the policies of the prosecuting authority," which require
> "declining prosecution" in cases like hers, unconstitutionally
> "discriminate[ ]" against victims like her "without rational foundation
> and therefore violate[ ] the Equal Protection Clause of the Fourteenth
> Amendment." Linda R.S., 410 U.S. at 616, 619, 93 S.Ct. 1146. See
> also Id. at 621, 93 S.Ct. 1146 (White, J., dissenting) (noting the
> implications of the Court's logic for other equal protection claims,
> including those based on race).
>
> Our sister circuits have likewise construed *Linda R.S.* to foreclose
> suit—and that is so despite the fact that the plaintiffs there alleged
> unconstitutional discrimination.

Id. at 656. Here, like in Lefebure, the Plaintiff seeks judicial review of decisions related to the investigation and prosecution of Williams both in connection with the Plaintiff's incident and incidents that involved others. As such, the Plaintiff cannot demonstrate that she suffered any injury because there is no constitutional right to a law enforcement investigation or prosecution. In fact, the Plaintiff has pled no facts which plausibly demonstrate Jenkins did or did not do anything to cause the Plaintiff's injuries, much less that some act or omission of his somehow violated her constitutional rights. Thus, like in Lefebure, the Plaintiff cannot demonstrate she was injured in some way, and thereby lacks standing to pursue her claims. Accordingly, Counts IV and V are due to be dismissed.

2. **Even if the Plaintiff has standing, the claims under 42 U.S.C. §1983 against Jenkins are still due to be dismissed because there is no constitutional right to a law enforcement investigation or to be protected from the crimes of third parties.**

The Plaintiff's §1983 claims must also fail because Plaintiff states no facts which plausibly link Jenkins to any purported constitutional deprivation.

In order to maintain a claim under §1983, Plaintiff must show she "(1) was deprived of a right secured by the Constitution or laws of the United States; and (2) that [s]he was subjected or caused to be subjected to that deprivation by a person acting under color of state law." Gregory v. Shelby Cnty., 220 F.3d 433, 441 (6th Cir. 2000) (citations omitted). "[A] §1983 plaintiff generally must prove that a defendant was personally at fault and that the defendant's culpable conduct (not somebody else's) caused the injury." Pineda v. Hamilton Cnty., Ohio, 977 F.3d 483, 490 (6th Cir. 2020). In other words, Jenkins may only be held liable for his own actions, not for the actions of other officials. Beck v. Hamblen Cnty., Tenn., 969 F.3d 592, 600 (6th Cir. 2020) ("Section 1983 also permits plaintiffs to obtain damages from a government official only for that official's own actions, not for the actions of others."). In order to establish liability against Jenkins, Plaintiff must demonstrate he, individually, "actively engaged in unconstitutional behavior." Gregory v. City of Louisville, 444 F.3d 725, 751 (6th Cir. 2006). Further, the Sixth Circuit has noted:

> This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right. We must analyze separately whether Heyne has stated a plausible constitutional violation by each individual defendant, and we cannot ascribe the acts of all [i]ndividual [d]efendants to each individual defendant.

Heyne v. Metro. Nashville Pub. Sch., 655 F.3d 556, 564 (6th Cir. 2011) (citations and quotations

Page 7 of 22

omitted). Significantly, the Plaintiff cannot rely upon broad, unspecific references to "Defendants" to impute liability to any one individual. See <u>Garton v. Crouch</u>, U.S. Dist. LEXIS 15859, at *25 (E.D. Tenn. Jan. 28, 2022) (noting district courts in the Sixth Circuit and in the Eastern District of Tennessee specifically, have uniformly held that "group pleading" does not suffice to state colorable claims against individuals).

More generally, "[c]laims have facial plausibility when a plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). While the complaint need not contain "detailed factual allegations," it must offer "more than unadorned, the-defendant-unlawfully-harmed-me-accusation," and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>

Here, the Plaintiff advances two theories under §1983. First, in Count IV, the Plaintiff broadly asserts that Jenkins violated the equal protection clause of the Fourteenth Amendment by failing to investigate the Plaintiff's incident due to an unconstitutional pattern or practice related to the investigation of crimes against women. Doc. 1, Page ID #18-9. The Plaintiff also asserts in Count IV that such alleged failure was based upon the "Defendants'" acceptance of bribes. Second, in Count V, the Plaintiff broadly asserts that the Defendants violated the substantive due process clause of the Fourteenth Amendment by failing to investigate and charge Williams before the Plaintiff fell out of Williams' window. Doc. 1, Page ID #19. The Plaintiff also appears to mix in the same allegations as her Equal Protection claim to support her Due Process claim in Count V. That is, the Plaintiff appears to broadly allege in Count V that her injury was caused by JCPD's alleged failure to previously investigate Williams based upon JCPD's purported gender-based discriminatory

Page 8 of 22

practices. Doc. 1, Page ID #19.

With respect to the substantive due process claim in Count V, the Plaintiff had no clearly established right to a law enforcement investigation against Williams either before or at the time of her incident, and similarly, no clearly established right to protection from the criminal acts of third parties. As a general matter, the Due Process Clause is "to protect the people from the State, not to ensure that the State protect[s] them from each other." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 196 (1986). "[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Id. at 197.

In addition, there is no cognizable constitutional right to a law enforcement investigation under the due process clause. "It is clearly established that a private citizen has no Constitutional, statutory, or common law right to require a public official to investigate or prosecute a crime." White v. Greene Cnty. Sheriff's Dep't, 2014 WL 3058393, at *9 (E.D. Tenn. 2014), aff'd (June 25, 2015) (internal quote and citation omitted); See also White v. City of Toledo, 217 F. Supp. 2d 838, 841–42 (N.D. Ohio 2002) (citing DeShaney v. Winnnebago Cnty. Dep't of Social Servs., 489 U.S. 189, 195 (1989).

Simply put, there is no constitutional right to an investigation into or for protection from the criminal acts of third parties. Thereby, in order for the Plaintiff's claims to survive, one of the following exceptions must apply: the state created danger exception or the special relationship exception. Jones v. Union County, 296 F.3d 417, 428 (6th Cir. 2002). The Plaintiff here appears to rely upon the state created danger exception in support of her due process claim.

To prevail on the state created danger exception, the Plaintiff must show "(1) an affirmative act that creates or increases the risk to the plaintiff, (2) a special danger to the plaintiff as

distinguished from the public at large, and (3) the requisite degree of state culpability." <u>Stiles ex rel. D.S. v. Grainger Cnty.</u>, 819 F.3d 834, 854 (6th Cir. 2016). "The ultimate question in determining whether an affirmative state action increased danger to an individual is whether the individual was safer before the state action than after it." Id.

The Plaintiff cannot demonstrate the state created danger exception applies because she has not sufficiently pled that any affirmative act of Jenkins *prior to her fall* increased the risk to her as opposed to the public at-large. The Plaintiff alleges that "[a]s a result of Defendants accepting bribes and turning a blind eye, Plaintiff was drugged by Williams and pushed out a five-story window . . ." Doc. 50, Page ID #757. However, there are no *specific* allegations that Jenkins took money from Williams or his associates prior to September 2020. In fact, there are no specific allegations that Jenkins even knew who Williams was prior to the Plaintiff's fall, much less that Jenkins knew that Williams had allegedly committed various sexual assaults prior to that time. Even if Jenkins did know who Williams was and even if he did take bribe money from Williams prior to the Plaintiff's fall, which he absolutely denies, the Plaintiff does not explain how either increased her personal danger of victimization by Williams, as opposed to the public at-large.

Further, even if Jenkins did "turn a blind eye" to Williams' alleged criminal activity prior to the Plaintiff's fall, which he denies, such failure to act does not satisfy "affirmative act" requirement under the state created danger exception, nor did Jenkins' alleged failure to act increase the personal danger to the Plaintiff as opposed to the public-at-large. See <u>Meyers v. Cincinnati Bd. of Educ.</u>, 343 F. Supp. 3d 714, 723 (S.D. Ohio 2018) (holding "[o]mission and failures to act are not affirmative acts."); See also <u>Landgon v. Skelding</u>, 524 F. App'x 172, 172 (6th Cir. 2013) (holding state did not create danger because "[t]he facts alleged merely show that the defendants did not do enough to

investigate the complaints of abuse, and this is a mere failure to act").

As Plaintiff has not alleged any affirmative act that placed her in a less safe position as opposed to the public at-large, and because she did not have a constitutional right to an investigation into the incident, Plaintiff has not plausibly alleged facts to support her claims.

3.   **The Second Amended Complaint does not state a claim for a violation of the Plaintiff's right to equal protection.**

The Plaintiff has failed to properly plead an equal protection claim in Count IV. The equal protection clause prohibits state actors from denying "to any person within [their] jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, §1. This clause requires that "similarly situated individuals" be treated in a similar manner. Nicholson v. City of West Lake, 76 Fed. Appx. 626,629 (6th Cir. 2003). "A plaintiff may state a claim for an equal protection violation by alleging 'discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently from others similarly situated without any rational basis for the difference.'" Flinchum v. City of Beattyville, 224 F.Supp. 3d 536, 542 (E.D. Ken. 2016) (quoting Rondigo, L.L.C. v. Twp. of Richmond, 641 F.3d 673, 681-82 (6th Cir. 2011)).

It is first important to reiterate the Plaintiff's equal protection claim appears to be based upon sex or gender. However, the Plaintiff does not allege Jenkins, or any member of the JCPD, investigated crimes involving male victims differently than they did crimes that involved female victims, nor does the Plaintiff allege any of the Defendants investigated claims of sexual assault which involved female victims any differently than other crimes, such as domestic assault. As such, Jenkins submits the Plaintiff fails to state a claim under the equal protection clause without such plausibly pled facts. See Bertovich v. Vill. of Valley View, 431 Fed. Appx. 455, 458 (6th Cir. 2011).

Also, the allegation regarding the acceptance of bribes is not material to a claim for gender or sex-based discrimination, nor does it support such a claim. As discussed above, the Plaintiff's equal protection claim is rooted in alleged gender or sex-based discriminatory practices, not upon her status as an alleged Williams' victim. Simply stated, while the alleged acceptance of bribes could show that the JCPD treated Williams and his victims (which also purportedly included children) differently than other victims of crime, such is not material to a claim that is based upon a systemic, gender-based discriminatory practice.

Moreover, to the extent the Plaintiff asserts an equal protection claim based upon the allegation that she was treated differently based upon Jenkins' alleged acceptance of bribes from Williams, such a claim too must fail. This type of claim is known as a "class of one" equal protection claim. A "class of one" equal protection claim is one where the plaintiff alleges that he or she has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." See Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000). "A 'class of one' plaintiff may demonstrate that government action lacks a rational basis either by negativing every conceivable basis which might support the government action, or by showing that the challenged action was motivated by animus or ill-will." TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty., Ohio, 430 F.3d 783, 788 (6th Cir. 2005) (citing Warren v. City of Athens, Ohio, 411 F.3d 697, 710-11 (6th Cir. 2005)).

However, the Plaintiff pleads no facts which demonstrate that other alleged sexual assault victims who were victimized by someone other than Williams were treated differently than the Plaintiff. In other words, the Plaintiff has pled no facts which plausibly demonstrate Jenkins investigated a sexual assault case that did not involve Williams as the perpetrator any differently than

Page 12 of 22

he did the Plaintiff's incident. As a result, the Plaintiff fails to state an equal protection claim. See

Bertovich v. Vill. of Valley View, 431 Fed. Appx. 455, 458 (6th Cir. 2011) (dismissing "class of one"

claim when plaintiff failed allege facts that a similarly situated victim was treated differently).

    **4.    The Plaintiff's claims under §1983 are barred by the statute of limitations.**

The Plaintiff's equal protection and substantive due process claims brought pursuant to

§1983 are both barred by the statute of limitations. "[C]onstitutional claims asserted under §1983

are governed by the state personal injury statute of limitations." Fox v. DeSoto, 489 F.3d 227, 233

(6th Cir.2007) (citations omitted).

> Tennessee Code Annotated 28-3-104(a)(3) provides that a civil
> action brought under the federal civil rights statutes must be filed
> within one year after the cause of action accrues. Thus, Tennessee has
> a one year statute of limitations for actions brought under federal civil
> rights statutes, including §1983. Sharpe v. Cureton, 319 F.3d 259, 266
> (6th Cir.2003) (citing Tenn. Code Ann. 28-3-104(a)(3); Berndt v.
> Tennessee, 796 F.2d 879, 883 (6th Cir.1986)).

Powers v. Wallen, 2013 U.S. Dist. LEXIS 45212 (E.D. Tenn. Mar. 29, 2013), at *3 (E.D. Tenn.

March 29, 2013). While claims asserted under §1983 are governed by Tennessee's one-year statute

of limitations for personal injury actions, accrual of a cause of action under §1983 is governed by

federal law. Id. Generally, courts apply the standard rule for when a cause of action accrues, which

provides the limitations period starts to run "when the plaintiff has a complete and present cause of

action." Dibrell v. City of Knoxville, Tennessee, 984 F.3d 1156, 1162 (6th Cir. 2021). In addition,

though there is some conflict, the Sixth Circuit does currently permit application of the "discovery

rule" to the accrual of §1983 claims:

> The Supreme Court has twice suggested in this §1983 context that the
> presumptive accrual rule starts the running of a limitations period on
> the first day that a plaintiff may sue on a claim, which occurs once the

> plaintiff has a "complete and present cause of action[.]" We have, by
> contrast applied the "discovery rule" to §1983 claims. This rule
> delays the start of the limitations period until a plaintiff learns of (or
> should have learned of) the injury and the party who caused it - even
> if all of the claim's required legal elements had come into existence
> before that point.

Bannister v. Knox Cnty. Bd. of Educ., 49 F.4th 1000, 1008 (6th Cir. 2022) (citations omitted). The

inquiry under the discovery rule is an objective one, with the issue being "what event should have

alerted the typical lay person to protect his or her right." Roberson v. Tennessee, 399 F.3d 792, 794

(6th Cir. 2005) (citations omitted). "A plaintiff has reason to know of his injury when he should have

discovered it through the exercise of reasonable diligence." Johnson v. Memphis Light Gas & Water

Div., 777 F.3d 838, 843 (6th Cir. 2015).

Plaintiff alleges she could not have learned of JCPD's alleged intentional failure to

investigate Williams until September 6, 2023, when an amended complaint was filed in the Doe

case. Doc. 50, Page ID #767. The Plaintiff alleges that this was the first time she suspected "foul

play" in the form of bribes to JCPD officers from Williams in order to protect Williams. Id.

However, the Plaintiff references a lawsuit filed against the City in this Court by former

federal prosecutor Kateri Dahl, Dahl v. Turner, et al., No. 2022-cv-00072-KAC-JEM (hereinafter

the "Dahl case"). See Doc. 50, Page ID #766. The Dahl case was filed June 23, 2022. Doc. 50, Page

ID #749. The Plaintiff alleges that according to the June 23, 2022 Dahl complaint, Dahl sued the City

for unlawful termination because she believed she was fired from her job for insisting that JCPD

investigate Williams. Doc. 50, Page ID #759. The Plaintiff was also referenced in the initial

complaint in the Dahl case. See Dahl, Doc. 14, Page ID #113 - 114. Further, the Dahl complaint

alleges, "Dahl became concerned that Johnson City was intentionally refusing or recklessly failing

to investigate or seize [Williams], either (a) because [Williams] was corruptly paying off Johnson City officers, and/or (b) to cover up plain incompetence." <u>Dahl</u>, Doc. 14, Page ID #124.

Here, the Plaintiff knew or should have known she may have a cause of action at the time the complaint in the Dahl case was filed on June 23, 2022. Notably, the Plaintiff's incident was detailed in the Dahl complaint, and as the Plaintiff explains in the Second Amended Complaint, the Dahl complaint "reveal[ed] JCPD's systemic and pervasive practice of facilitating and ignoring acts of sexual violence, including rapes of adults and minors, and drug activity by Williams and his accomplices." Doc. 50, Page ID #749.

Notably, Judge McDonough has already ruled in the Doe case that the plaintiffs in that case, who alleged they survived sexual assault, would not have been on notice that JCPD's allegedly inadequate investigations "was symptomatic of an intricate sex-trafficking conspiracy between public officials and a serial rapist" until "Dahl filed a complaint on June 23, 2022, detailing JCPD's alleged misconduct." See <u>Doe</u>, No. 2:23-cv-00071-TRM-JEM, Doc. 301, Page ID #7627-7637. The plaintiffs in the Doe case, however, filed their case June 23, 2023, exactly one year after Dahl filed her lawsuit, and as a result, their claims under 42 U.S.C. §1983 were determined by Judge McDonough to be timely. Jenkins submits the opposite should occur in this case as the Plaintiff here did not file her lawsuit until almost two years after the Dahl case was filed. By that time, the Plaintiff had been referenced in the Dahl case, which again, detailed JCPD's alleged discriminatory practices against women and their purported connection to Williams. For that reason, all of the Plaintiff's under 42 U.S.C. §1983 are due to be dismissed.

**5.    Jenkins is entitled to qualified immunity.**

Even if Plaintiff was able to establish that she has plausibly pled causes of action under

§1983, and that such were timely filed, the allegations in the Second Amended Complaint do not demonstrate that Jenkins violated a clearly established right; therefore, Jenkins is entitled to qualified immunity. Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982); <u>see also</u> <u>Cullinan v. Abramson</u>, 128 F.3d 301, 312 (6th Cir. 1997) (reversing denial of qualified immunity for claims brought pursuant the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1961 *et seq.*). Qualified immunity "'gives ample room for mistaken judgments by protecting 'all but the plainly incompetent or those who knowingly violate the law'" <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 342 (1986)). It is also "well-settled that qualified immunity must be assessed in the context of each individual[] [officer's] specific conduct."<u>Stoudemire v. Mich. Dep't of Corr.</u> 705 F.3d 560, 570 (6th Cir. 2013) (quoting <u>Reilly v. Vadlamudi</u>, 680 F.3d 617, 624 (6th Cir. 2012)).

This circuit held in <u>Russo v. City of Cincinnati</u>, 953 F.2d 1036 (6th Cir. 1992) that the burden is on the Plaintiff to show that a clearly established right had been violated:

> When a claim to qualified immunity is raised within the context of a motion for summary judgment, the non-movant must allege facts sufficient to indicate that the act in questions violated clearly established law at the time the act was committed. <u>See Dominique v. Telb</u>, 831 F.2d 673, 677 (6th Cir 1987) (holding that the plaintiff is obliged to present facts that, if true, would constitute a violation of clearly established law). Thus, the plaintiff must effectively pass two hurdles when facing a defendant on summary judgment who claims qualified immunity. First, the allegation must "state a claim of violation of clearly established law." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985). Second, the plaintiff must present "evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." <u>Id.</u> At the summary judgment stage,

Page 16 of 22

> whether the legal violation alleged was clearly established at the
> time of the incident, as well as whether a genuine issue of material
> fact exists as to whether the alleged violation occurred, are questions
> of law for the court. <u>Dominique</u>, 831 F.2d at 677.

<u>Russo</u>, 953 F.2d at 1043. In addition, the Supreme Court has further refined the burden a plaintiff

must establish to defeat qualified immunity. The Supreme Court has held that the actions of the

police officer must have violated a clearly established right and that right must be so clear "that every

reasonable officer would have understood that what he is doing violates that right." <u>Ashcroft v. Al-</u>

<u>Kidd</u>, 563 U.S. 731, 741 (2011).

Further, "[a]lthough '[the Supreme Court's] case law does not require a case directly on point

for a right to be clearly established, existing precedent must have placed the statutory or

constitutional question beyond debate." <u>Rivas-Villegas v. Cortes-Luna.</u> No. 20-1539, 2021 U.S.

LEXIS 5311, at *6 (2021) (quoting <u>White</u>, 137 S. Ct. at 551). "This inquiry 'must be undertaken in

light of the specific context of the case, not as a broad general proposition.'") <u>Rivas-Villegas</u>, 2021

LEXIS 5311 at *6 (quoting <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004)).

Now that Jenkins has raised the defense, the burden is on the Plaintiff to show that some

conduct specifically attributable to him violated a clearly established right. For the reasons asserted

above, Jenkins submits the Plaintiff cannot meet this burden and that the claims against him should

be dismissed.

### 6. Jenkins is immune from the negligence claims brought pursuant to the Tennessee Governmental Tort Liability Act ("TGLTA").

To the extent asserted against Jenkins, the negligence claim brought pursuant to the TGTLA

is due to be dismissed because Jenkins is immune from such claims. The TGTLA affirms that

government entities in Tennessee are generally immune from suit. T.C.A. §29-20-201. However, as

cited by the Plaintiff in Count I, a government entities' immunity from suit may be removed for an "injury proximately caused by a negligent act or omission of any employee within the scope of his employment." T.C.A. §29-20-205. Notably, under the TGTLA, "[n]o claim may be brought against an employee or judgment rendered against an employee for damages for which the immunity of the governmental entity is removed by this chapter . . ." T.C.A. §29-20-205(a). Here, because the City's immunity is removed under T.C.A. §29-20-205 for the allegedly negligent acts of its employees, the Plaintiff cannot maintain actions under the TGTLA against Jenkins. Accordingly, Count I is due to be dismissed.

### 7. The Plaintiff's state law claims are barred by the statute of limitations.

The Plaintiff's remaining personal injury state law claims based upon theories of civil conspiracy, fraudulent concealment and intentional infliction are barred by the statute of limitations. As discussed above, Tennessee has a one-year statute of limitations for personal injury claims. See T.C.A. §28-3-104(a)(3). Also as discussed above, the Plaintiff's claims accrued on June 23, 2022, when the Dahl case was filed. Accordingly, and for the same reasons the Plaintiff's federal claims are untimely, the Plaintiff's state law claims are barred by the statute of limitations.

### 8. The Plaintiff failed to properly plead a claim of fraudulent concealment.

In Count III, the Plaintiff alleges a claim of fraudulent concealment based upon purported short-comings in the investigation by JCPD into her incident. Allegations of fraud must be plead with specificity, as Fed. R. Civ. P. 9(b) provides, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Id. In Ferrell v. Addington Oil Corp., No. 2:08-CV-74, 2010 U.S. Dist. LEXIS 85547, at *17 (E.D. Tenn. 2010), this Court explained "[t]o

Page 18 of 22

satisfy Rule 9(b), a complaint of fraud, at a minimum, must allege the time, place, and content of the alleged misrepresentation on which [the plaintiff] relied; the fraudulent scheme; the fraudulent intent of the defendant[ ]; and the injury resulting from the fraud." Id. (internal citations and quotations omitted).

The reason for the heightened pleading requirement of Rule 9(b) is that claims of fraud "raise a high risk of abusive litigation." See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 569, n. 14 (2007). Here, the Second Amended Complaint contains no details as to what specific fraudulent act Jenkins was allegedly guilty of which caused any injury to Plaintiff. For instance, there are no specific allegations that Jenkins did anything fraudulent before the Plaintiff's incident. Likewise, there are no allegations that plausibly link the allegations regarding Female 9 in 2023 to the Plaintiff's incident in 2020. For these reasons, the Plaintiff does not state a claim for fraudulent concealment and Count III should be dismissed.

**9.      Plaintiff fails to state a claim for intentional infliction of emotional distress.**

In Count VI, the Plaintiff alleges a claim of intentional infliction of emotional distress based upon actions purportedly taken during the course of the investigation of Plaintiff's incident. There are no allegations specific to Jenkins in Count VI.

In order to establish a claim for intentional infliction of emotional distress, the Plaintiff must show "that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." Rogers v. Louisville Land Co., 367 S.W.3d 196, 205 (Tenn. 2012). Here, the Plaintiff has not pled any specific, intentional conduct allegedly committed by Jenkins which caused any injury. Rather, the allegations against him are entirely conclusory.

Accordingly, the intentional infliction of distress claim is due to be dismissed.

**10.  The Plaintiff fails to state a claim for civil conspiracy.**

In Count II, the Plaintiff alleges a claim for civil conspiracy. In Tennessee, in order to establish a claim for civil conspiracy, a claimant must show:

> (1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury.

Kincaid v. South Trust Bank, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006). Also, a claim for civil conspiracy "requires an underlying predicate tort allegedly committed pursuant to the conspiracy." Watson's Carpet & Floor Covering, Inc. v. McCormick, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007) Standing alone, conspiracy is not actionable where the underlying tort is not actionable. Id. at 179, 180. Last, "[c]ivil conspiracy claims must be pled with some degree of specificity in order to survive a motion to dismiss; conclusory allegations unsupported by material facts will not be sufficient to state a claim." PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Cluff City Cmty. Dev. Corp., 387 S.W.3d 525, 556 (Tenn. Ct. App. 2012).

Here, the Plaintiff fails to state a claim for civil conspiracy because the allegations against Jenkins are entirely conclusory and not at all specific. For instance, there are no allegations that Jenkins specifically entered into any agreement to achieve some purpose unlawfully. Moreover, as discussed above, the Plaintiff does not plead any viable underlying claim so as to support a derivative civil conspiracy claim.

Accordingly, the claim for civil conspiracy is due to be dismissed.

**CONCLUSION**

Jenkins respectfully submits that for all the reasons stated herein, each and every claim asserted against Jenkins is due to be dismissed.

Respectfully submitted,

ROBINSON, SMITH & WELLS, PLLC

By: _____ s/ _Keith H. Grant_ _____
          Keith H. Grant, BPR# 023274
          Laura Beth Rufolo, BPR# 015622
          Philip Aaron Wells, BPR# 036248
          Suite 700, Republic Centre
          633 Chestnut Street
          Chattanooga, TN 37450
          Telephone:   (423) 756-5051
          Facsimile:   (423) 266-0474
          *Attorneys for Justin Jenkins, Brady Higgins and Jeff Legault, in their individual capacity*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading was filed electronically on February 3, 2025. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

Robinson, Smith & Wells, PLLC

By: _____ s/ _Keith H. Grant_ _____

cc:    Bob Dziewulski, BPR# 037046
       Ashleigh Beer-Vineyard, BPR# 038399
       DZ LAW, PLLC
       800 South Gay Street, Suite 2131
       Knoxville, TN 37929
       (865) 259-0020
       bobdz@dzlaw.com

ashleighbeer@dzlaw.com
*Attorneys for Plaintiff*

Reid A. Spaulding
WATSON, ROACH, BATSON & LAUDERBACK, PLC
P.O. Box 131
Knoxville, TN 37901-0131
rspaulding@watsonroach.com

Thomas J. Garland, Jr.
MILLIGAN & COLEMAN, PLLP
230 W. Depot Street
P.O. Box 1060
Greeneville, Tn 37744
tgarland@milligancoleman.com
*Attorneys for Johnson City and Karl Turner*

Kristin Ellis Berexa
Ben C. Allen
FARRAR & BATES
12 Cadillac Drive, Suite 480
Brentwood, TN 37027-5366
kberexa@fbb.law
ballen@fbb.law
*Attorneys for Toma Sparks*

Daniel H. Radar IV
Andre S. Greppin
MOORE, RADER & YORK, PC
P.O. Box 3347
Cookeville, TN 38502-3347
danrader@moorerader.com
danny@moorerader.com